UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Betty Y.C.A., | Civ. No. 26-75 (JWB/LIB) |
| Petitioner, | |
| v. | ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER |
| Todd Lyons, *in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement*; Peter Berg, *in his official capacity as the St. Paul Field Office Director for U.S. Immigration and Customs Enforcement*; Kristi Noem, *in her official capacity as Secretary of the United States Department of Homeland Security*; and Pamela Bondi, *Attorney General of the United States*, | |
| Respondents. | |

---

Magdalena B. Metelska, Esq., Metelska Law, P.L.L.C., counsel for Petitioner.

Ana H. Voss, Esq., United States Attorney's Office, counsel for Respondents.

---

Petitioner Betty Y.C.A. moves for a temporary restraining order ("TRO") enjoining her transfer outside of the District of Minnesota or granting immediate release from custody while her habeas petition is pending. (Doc. No. 5.) For the reasons below, Petitioner's motion is granted in part.

## BACKGROUND

Petitioner is a citizen of Ecuador who entered the United States on January 15, 2022, and was released on an Order of Release on Recognizance pursuant to 8 U.S.C.

§ 1226(a). (Doc. No. 1, Petition ¶¶ 34, 36.) Respondents initiated removal proceedings pursuant to 8 U.S.C. § 1229 on July 25, 2022, and ordered Petitioner to appear in immigration court. (*Id.* ¶¶ 37–38.) Petitioner applied for asylum on September 22, 2023. (*Id.* ¶ 39.) She alleges that she has complied with all scheduled hearings, deadlines, and legal obligations. (*Id.* ¶ 40.) She has no known criminal history. (*Id.* ¶ 46.)

On January 7, 2026, Immigration and Customs Enforcement ("ICE") arrested and detained Petitioner. (*Id.* ¶ 41.) Petitioner believes Respondents seek to transfer her from Fort Snelling, where she is currently being held. (*Id.* ¶¶ 10, 44–45.)

## DISCUSSION

### I.   Legal Standard

The governing standard requires weighing four factors: likelihood of success on the merits, irreparable harm, balance of harms, and the public interest. *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). When the Government is the opposing party, the last two factors merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

### II.   Analysis

#### A.   Likelihood of Success on the Merits

The likelihood of success factor requires Petitioner to show she has a fair chance of prevailing on her claims. *Cigna Corp. v. Bricker*, 103 F.4th 1336, 1343 (8th Cir. 2024). It is not a decision on whether she will ultimately win. *PCTV Gold, Inc. v. SpeedNet, LLC*, 508 F.3d 1137, 1143 (8th Cir. 2007). To obtain relief, she needs to satisfy this factor on one of her claims. *See United Healthcare Ins. Co. v. Advance PCS*, 316 F.3d 737, 742–43 (8th Cir. 2002).

Petitioner claims that her detention violates due process. Respondents previously released Petitioner in January 2022 on her own recognizance under 8 U.S.C. § 1226(a). Since then she has complied with the terms of her release. Petitioner's arrest and re-detention—allegedly without factual or legal basis—raises serious due process concerns under the Fifth Amendment, even in the immigration context where judicial deference is high but not without constitutional safeguards. *See Zadvydas v. Davis*, 533 U.S. 678, 700 (2001) (stating the Executive Branch has broad latitude in the realm of immigration but remains subject to important constitutional limitations).

As alleged, Petitioner raises a sufficient question over whether Respondents are using detention and removal proceedings—civil processes—for punishment, and not to advance the legitimate purposes of immigration detention. *See id.* at 690 (recognizing that ensuring future appearances and preventing danger to community are two legitimate reasons for immigration detention).

The Petition also raises the issue of whether INA § 1226 governs Petitioner's circumstances and whether Respondents are improperly detaining Petitioner under INA § 1225. The re-detention of Petitioner despite Respondents' previous custody determination, seemingly without cause or proper statutory authority, tips this factor in Petitioner's favor.

B.   **Irreparable Harm**

The risk of irreparable harm here is clear. If Petitioner is transferred or removed from this District before her claims can be adjudicated, judicial review may be impeded and perhaps lost altogether. *See Mohammed H. v. Trump*, Civ. No. 25-1576 (JWB/DTS),

2025 WL 1170448, at *4 (D. Minn. Apr. 22, 2025) ("Once a petitioner is removed from the jurisdiction of the detaining court, access to counsel may be severed, the custodian may no longer be subject to the Court's authority, and the petitioner's ability to participate meaningfully in litigation may be impaired or lost completely.")

Deportation—or even transfer to a distant facility—is a harm that cannot be undone after the fact. The Eighth Circuit is clear that even temporary deprivations of constitutional rights constitute irreparable injury. *Ng. v. Bd. of Regents*, 64 F.4th 992, 998 (8th Cir. 2023). And loss of liberty is a quintessential example of irreparable harm. *Matacua v. Frank*, 308 F. Supp. 3d 1019, 1025 (D. Minn. 2018).

Further, Petitioner has a young child who she currently breastfeeds multiple times a day. (Petition ¶ 42.) Until her detention, she had never been separated from her child for long periods of time. (*Id.*) Separating a nursing mother from her child undoubtedly constitutes irreparable harm. *See Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1155 (D. Minn. 2025) ("The Court finds that the harm of separating a nursing mother and child is self-evident.")

### C. Balance of Harms, Public Interest

No prejudice to Respondents is discernable from maintaining the status quo until Petitioner's habeas petition is decided on the merits. By contrast, transferring Petitioner out of this District could hinder her access to counsel and diminish her ability to effectively present her claims. *Escalante v. Bondi*, Civ. No. 25-3051 (ECT/DJF), 2025 WL 2212104, at *2 (D. Minn. July 31, 2025), *R&R adopted*, 2025 WL 2235056 (D. Minn. Aug. 5, 2025). Transfer would also further the distance between Petitioner and her

4

child and increases the risk that she is unable to nurse for a prolonged period of time. The balance of harms thus tilts toward Petitioner.

The public interest likewise supports preventing unlawful detention and preserving meaningful judicial review. The Constitution requires nothing less.

Given these considerations, immediate intervention is necessary. Petitioner's motion is granted to the extent that it seeks to prevent her removal or transfer from this District.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in this case, **IT IS HEREBY ORDERED** that:

1. Petitioner Betty Y.C.A.'s Emergency Motion for Preliminary Injunction or Temporary Restraining Order (Doc. No. 5) is **GRANTED IN PART**.

2. Respondents—along with their officers, agents, employees, and all persons acting in concert with them—shall not remove, transfer, or otherwise facilitate the removal of Petitioner from the jurisdiction of the United States District Court for the District of Minnesota pending further order of this Court.

3. No security is required under Federal Rule of Civil Procedure 65(c). The TRO seeks only to prevent ongoing statutory and constitutional violations; Petitioner is detained and unable to post a bond; and the relief ordered here—maintaining the status quo—presents no apparent risk of monetary loss to the Government.

4. This Order shall remain in effect for 14 days from the date of entry, unless extended by further court order under Federal Rule of Civil Procedure 65(b)(2).

Date: January 8, 2026                           *s/ Jerry W. Blackwell*
Time: 4:40 P.M.                                JERRY W. BLACKWELL
                                                                           United States District Judge